# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA EASTERN DIVISION

| | |
|---|---|
| **ANNA BRYANT** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | **CASE NO.:  1:17-cv-00684-SGC** |
| ) | Oral argument requested |
| **HCC LIFE INSURANCE** ) | **OPPOSED** |
| **COMPANY** ) | |
| **and Fictitious Defendants** ) | |
| **A, B, C, D, E, F, and G** ) | |
| ) | |
| **Defendants.** ) | |

## PLAINTIFF'S MOTION TO AMEND THE SCHEDULING ORDER

Plaintiff, by and through counsel, respectfully requests that this Court amend the scheduling order in this case to allow plaintiff to take up to twenty depositions.  As grounds therefore, the plaintiff shows as follows:

1.  Plaintiff's counsel needs to depose the eight claims employees and the two claims officers identified by HCC as being involved in or having knowledge of Ms. Bryant's claims.  In addition, counsel will need to take a 30(b)(6) deposition[1], the depositions of three to five of the customer service

---

[1] This has been noticed and plaintiff's counsel has been attempting to get dates from counsel.

representatives, deposition(s) of the defendant's expert(s), and potentially other depositions depending on what the other depositions reveal.

2.   The undersigned has communicated with counsel for the defendant by telephone and by email in an effort to resolve this dispute.

## **GOOD CAUSE EXISTS**

3.   Counsel has good cause for seeking this modification. *See* Fed. R. Civ. P. Rule 16(b)(4). On May 31, 2017, when the parties initially set deposition limits, counsel for the parties did not appreciate the number of claims and customer service representatives involved with Ms. Bryant's claim. In fact, at the time, defendant's initial disclosure only identified two individuals by name and in their first interrogatory answers, served June 29, referred only to documents produced in the action. These documents are attached as Exhibit A to the Evidentiary Materials. The documents themselves identified portions of names and did not identify roles or the identity of employers.

4.   On November 1, 2017, HCC supplemented its interrogatory answers to reveal that eight additional HCC claims employees were involved in the handling of Ms. Bryant's claims (in addition to the two that the Defendant originally identified in its Initial Disclosures), and that 28 separate

HCC representatives were involved in answering calls on HCC's behalf with Ms. Bryant and her health care providers.[2] (Evidentiary Submission, Ex. B, *filed under seal pending determination of confidentiality*). These 28 individuals apparently are employed by a separate company call Global Response. These Global Response employees handled all calls that Anna Bryant and her healthcare providers made to HCC. HCC has produced tapes of these calls but apparently asserts that these Global Response employees do not act in a representative capacity for HCC (and that their statements are not binding on HCC).

**THE PROPOSED DISCOVERY IS RELEVANT TO MS. BRYANT'S CLAIMS AND PROPORTIONAL TO THE NEEDS OF THE CASE**

5.  Rule 26 establishes the following scope for discovery:

    Parties may obtain discovery of any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

---

[2] The typical insurance case involves one claims representative, not eight claims representatives and twenty eight customer service representatives. In addition, the claims representative is usually the insured's point of contact.

An analysis of these factors compels the allowance of the additional depositions.

### Relevant to Any Party's Claim Or Defense

6. As the Court knows, in this case the plaintiff alleges breach of contract and bad faith. Because intent, which can be difficult to prove, is an element of bad faith, courts afford wider latitude in discovery in bad faith cases. *See ex Parte Finkbohner*, 682 So. 2d 409, 412-14 (Ala. 1996).

7. Bad faith consists not only of the intentional refusal to pay a claim but also the intentional or reckless refusal to investigate the claim or submit the claim to a cognitive evaluation or review. *See State Farm Fire & Cas. v. Slade*, 747 So. 2d 293, 303-07 (Ala. 1999); *See also, Employee's Benefit Ass'n v. Grissett*, 732 So. 2d 968, 976 (Ala. 1998) (stating "a defendant's knowledge or reckless disregard of the fact that it had no legitimate or reasonable basis for denying a claim may be inferred and imputed to an insurer when it has shown a reckless indifference to facts or proof submitted by the insured").

8. Specifically, Ms. Bryant alleges:

> 5. From April through July 2016, Miss Bryant submitted approximately $50,000 in covered claims under the HCC policy, including claims for several surgical procedures.

6. However, HCC refused to pay any of these claims and insisted that Ms. Bryant's health care providers had not sent requested information.

7. Ms. Bryant confirmed with her health care providers that the requested information had been sent.

8. Ms. Bryant repeatedly inquired of HCC about the outstanding claims in an effort to get them paid.

9. HCC has maintained its denial.

10. Due to this denial, Ms. Bryant has received repeated collection letters concerning the unpaid balances for her care.

11. She has also suffered extreme mental anguish.

12. Defendant HCC has not made a single payment on Ms. Bryant's claims.

9. The requested depositions are relevant to the investigation and review done by HCC's claims people, their state of mind, their training, and their authority,  Likewise, the depositions of the Global Response personnel will lead to information about their authority, their training, and the resources that they are provided by HCC.  Such information is directly relevant to Ms. Bryant's claims against HCC, and, because the nature of the inquiry is focused on what the states of mind and

training of the 38 individuals involved in handling Ms. Bryant's claim, necessarily requires more than the original number of party depositions set forth in the scheduling order.

10. HCC also asserts in this litigation that Ms. Bryant's claims are barred by a pre-existing condition. (Doc. 4 at ¶¶19-20). The discovery sought from HCC's claims people will also seek information regarding this defense.

### The Importance of the Issues at Stake and the Amount in Controversy

11. The allegations in Ms. Bryant' complaint describe reprehensible conduct on the part of the defendant, which, if proven, will entitle the Plaintiff to recovery of the amount of the unpaid claims, mental anguish damages, and punitive damages. *See National Ins. Ass'n v. Sockwell*, 829 So. 2d 111, 141 (Ala. 2002)(upholding award of $201,000 for mental anguish and $600,000 in punitive damages in a case involving $40,000 of insurance benefits).

10. A review of the discovery produced to this date shows that these allegations are well-founded. For instance, the explanation of benefits forms and claims diary produced by HCC in this action show that HCC denied every single claim submitted by Ms. Bryant. (Evidentiary Submission, Ex. C, *filed*

*under seal pending determination of confidentiality* at HCC 430-35). The vast majority of these claims show that they were denied because "This file has been closed due to a lack of requested information from the provider(s)." (*See generally*, Evidentiary Submission, Ex. C, *filed under seal pending determination of confidentiality* at HCC 1092-1130).

11. Other complaints filed against HCC suggest that HCC has a pattern and practice of denying claims in this manner. For instance, in paragraph 42 of the *Peterson* complaint, filed in the Southern District of Alabama, the plaintiff alleges that HCC "denied all of the claims submitted to it" and "Moreover, one of the excuses given to Ms. Peterson…was that, although HCC had been sent the medical records it had requested, HCC claimed it did not have them, and even after being provided those records again, it continued to say it did not have them, and that it needed even more records." (Evidentiary Materials at Ex. D, ¶¶42, 46-49; *see also* Evidentiary Materials at Ex. D (alleging bad faith for wrongful denial of claims under short term healthcare policy)).

12. Similarly, a suit filed in the Northern District of California alleged that HCC denied claims of two putative class representatives for failure to provide medical records even though the records had been provided. (Evidentiary Materials at Ex. E,¶¶ 26-28, 33-36). HCC used a similar

explanation of benefit form that stated that the plaintiff's claims had been closed "due to a lack of requested information from the provider(s)." (*Id.* at ¶36).

13. If these allegations are true, then the issues at stake in this case are great and the amount in controversy is significant.

### Relative Access to Information and Resources of the Parties

14. The depositions sought are of HCC employees and independent contractors. As a result, Ms. Bryant has no access to them. Ms. Bryant has limited resources, is a new mother, and cares for sick relatives. Again, this factor favors the modification.

### The Importance of The Discovery in Resolving the Issues and Whether the Burden of the Discovery Outweighs its Benefit

15. HCC's discovery shows that 10 HCC employees were involved in the claims decisions relating to Anna Bryant. Since they were the decision makers, their depositions are critical. The plaintiff must know what actions they took or did not take, what they reviewed or did not review, and why they made the decisions they made. Twenty-eight (28) separate Global Response employees were involved in various calls with Anna Bryant and her providers. Of these, Bryant seeks to take 3 to 5 depositions. HCC now contends that these representatives, **who were the**

**only direct contact that Ms. Bryant or her healthcare providers had with HCC**, did not have authority to speak on HCC's behalf. Plaintiff's counsel must take these depositions to determine their authority, what training and other resources they were provided, and what information relating to Bryant's claims they had access to.

16. As to the burden, plaintiff's counsel understands that all of the HCC claims employees are in the same location. As a result, their depositions could be taken efficiently over a few days. The Global Response employees are in only two separate locations. To the extent there is a burden, HCC created it by establishing a claims process involving so many people (38) who were apparently incapable of reaching the decision that HCC should honor the health insurance policy that it promised to provide to Ms. Bryant. HCC should not be able to rely on the complexity that it created to frustrate the search for truth. Furthermore, any burden pales in comparison to the serious allegations involved in this case.

## **CONCLUSION**

For these reasons, Ms. Bryant respectfully states that this discovery is proportional to the needs of this case and respectfully requests that the

Court modify the scheduling order to allow the taking of up to twenty depositions by the plaintiff.

                        *s/ F. Inge Johnstone*
                        F. INGE JOHNSTONE (JOH159)
                        ijohnstone@johnstonecarroll.com
                        One of the attorneys for the Plaintiff

OF COUNSEL:
F. Inge Johnstone
Matthew F. Carroll
JOHNSTONE CARROLL LLC
2204 Lakeshore Drive
Suite 303
Homewood, AL 35209
Phone (205) 383-1809
Fax (888) 759-3882

## **CERTIFICATE OF SERVICE**

  I hereby certify that on December 1, 2017 I have served a copy of the foregoing upon counsel for the Defendant, by filing with the Court's CM/ECF system which will give notice to the following individuals:

J. Mark Hart
Andrew J. Sinor
Hand Arendall, LLC
1801 5th Avenue North
Suite 400
Birmingham, AL 35203

            /s/ *Inge Johnstone*
            OF COUNSEL

4819-3487-6233, v. 1